UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **RANDY WRIGHT**<br>     **LA. DOC #603329**<br>**VS.** | **CIVIL ACTION NO. 3:14-cv-3130**<br><br>**SECTION P**<br><br>**JUDGE ROBERT G. JAMES** |
| **JAMES M. LeBLANC, ET AL.** | **MAGISTRATE JUDGE KAREN L. HAYES** |

REPORT AND RECOMMENDATION

Pro se plaintiff Randy Wright, proceeding in forma pauperis, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on October 28, 2014. Plaintiff is an inmate in the custody of Louisiana's Department of Corrections (DOC). He is incarcerated at the River Bend Detention Center (RBDC) and complains that prison guards used excessive force against him; he also complains of various and sundry conditions of confinement. He sued DOC Secretary LeBlanc, East Carroll Parish Sheriff Williams, Warden Hedgemen and Correctional Officers Martin and Barnes. He prayed for a declaratory judgment, for a transfer, for injunctive relief, and for compensatory and punitive damages.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted.

*Statement of the Case*

*1. Excessive Force*

Plaintiff claims, in general, that unnamed prison guards routinely employ unjustified and

excessive force against the inmates at RBDC and that inmates are unjustifiably placed in isolation and threatened with other sanctions, including transfer to another facility and are not afforded due process by way of a proper disciplinary hearing.

Plaintiff claims specifically that on February 1, 2014, he was assaulted and battered by defendants Martin and Barnes. According to plaintiff, Martin and Barnes "did physically push, shove and force the plaintiff into an isolated hallway shower enclosure" whereupon Martin "proceeded to strike and slap the plaintiff in the face numerous times with his hands..." Meanwhile Barnes taunted and threatened plaintiff with his Mace cannister "... as if he was going to either mace the plaintiff or strike him with it." Throughout, both defendants "verbally abused and assaulted, with the addition of racist and prejudicial comments, harassed and further threatened not to report the incident." According to plaintiff, he did nothing to provoke or exacerbate the situation.

Plaintiff submitted a grievance to Warden Hedgeman wherein he demanded that his assailants' employment be terminated, and that they be prosecuted for their actions. He also demanded that he be transferred to another prison. However, "no intervention or other redress" was forthcoming from defendants Hedgeman or Williams. Plaintiff then submitted a formal grievance to the DOC outlining the facts as recited above, however his request for redress was ignored by Secretary LeBlanc.

*2. Equal Protection/Educational and Rehabilitation Programs*

Plaintiff is a convicted sex offender. He claims that he and other similarly situated inmates are "singled out for mistreatment and discrimination ... by not being afforded or presented with the same opportunities that all other non sex offenders are offered..." According

to plaintiff, there is an "un-written and well-known policy" of the Warden and Sheriff which prohibits sex offenders from participating in rehabilitation and educational programs. Further, while the facility does not offer "sex offender management classes to rehabilitate and educate inmates", it does provide parenting, drug abuse, financial management and anger management classes. Further, these unwritten policies of defendants Hedgemen and Williams result in the denial to sex offenders of trusty status, inmate jobs, and work-release opportunities.

### 3. Conditions of Confinement

Plaintiff also complains about conditions of confinement which he claims violate the Eighth Amendments proscription of cruel and unusual punishment. He claims that black mold is present in all shower enclosures; that dust and other allergenic particles cover the air conditioning ventilation ducts and vents; that an unidentified fungus can be found on several walls; that there are spider and insect infestations; that the sink and toilet facilities are unsanitary; and, that plaintiff and others are exposed to second-hand tobacco smoke.

Plaintiff complains that basic "... hygiene supplies such as toothbrushes, toothpaste, soap, sanitary napkins, razors, and cleaning products are not properly or even reasonably frequently issued to the plaintiff..."

### 4. Grievances

Plaintiff also complains that inmate grievances are routinely ignored, and, that outgoing grievances "going to the courts, the Federal Bureau of Prisons and the Department of Safety and Corrections are routinely intercepted and inspected, of which the majority are destroyed."

### 5. Searches

Plaintiff claims that the dormitories are randomly and periodically searched and during

the search the inmates are not allowed to be present to observe the inspection of their personal property in violation of the Fourth Amendment.

### 6. Contact Visitation

Plaintiff also complains that contact visitation is prohibited in violation of the First, Fifth, and Eighth Amendments.

### 7. Food

Plaintiff also complains that he and others have observed incidents where other inmates are ordered out of the mess hall without having been fed for petty rules violations. He also complains that food portions "are very meager and are substantially under the acceptable mandated servings or portions provided and called for by the Federal Bureau of Prisons and the Department of Safety and Corrections..." He claims that some days the food is "watered-down to stretch it further..." He argues that the meager portions are responsible for weight loss and malnutrition. Finally, he complains that trustys and kitchen workers may get second or third servings, all of which is denied to plaintiff.

### 8. "C.F.C. Program"

Plaintiff objects to the existence and operation of the Christian Fellowship Church or C.F.C., an approved food program "in which all inmates may, if they have the funds on their drawing accounts, purchase prepared and cooked foods and snacks to enjoy in the dormitory." Plaintiff complains that he is not informed as to "where the profits are being placed" and is also concerned about the source of the food items. He implies that the program takes food supplied for the benefit of all prisoners and sells it to those who can afford it.

*9. Nutrition and Cleanliness*

Plaintiff complains that the prison serves an over abundance of rice and other "pure starches ... topped with watered down gravy, cheese or beans..." which is not healthy and not part of a properly balanced diet. According to plaintiff this results in constipation and stomach aches for him and others.

He also complains about unsanitary practices and conditions, namely "... molds, dust and old food particles that have been frequently observed and un-disturbed in several areas of the kitchen, especially on the top of refrigerators, under stoves and on and around the ice machines." He also claims that kitchen staff have been observed not wearing gloves when handling or serving food and "improper use of the required hair nets."

*10. Time to Eat Meals*

Plaintiff also complains that he and his fellow inmates are not allowed sufficient time to eat their meals, sometimes limited to only 5 minutes, all despite the advice of the physician who advised the inmates to eat slower and chew thoroughly.

*11. Readily Available Medical Care*

Plaintiff complains that the prison medical staff are on duty from 8:00 a.m. to 5:00 p.m. Monday through Friday and on-call on evenings and weekends. Plaintiff is concerned that an unexpected complication or medical emergency might require prompt assistance which can only be provided if the facility has health care professionals on duty "around-the-clock."

*12. Medical Officer*

Plaintiff complains that the prison's "medical officer" has failed in his duty to report unhealthy and unsanitary conditions to the prison administration and to the Federal Bureau of

Prisons and the DOC.

### 13. Access to the Courts

Plaintiff complains that he and other indigent inmates are not provided necessary supplies, namely paper, ink, pens, and envelopes, necessary for them to exercise their right of access to the Courts. While the facility does provide notarial services and postage for indigent inmates, paper, ink, pens and envelopes are not furnished.

### 14. Outgoing Legal Mail

Plaintiff complains that "all of the plaintiff's and all other inmates mail that is out-going has to [be] left open for prison administration and staff for inspection, including all confidential legal mail and correspondences ... without any notice or reasons given as to the institutional interests or safety concerns by prison administrators." According to plaintiff "privileged out-going mail to attorneys and the courts, are read, inspected and screened by prison administration." According to plaintiff, this practice has resulted in missing deadlines and lost mail prohibiting the inmates from being able to accurately and fully explain their circumstances.

*Law and Analysis*

### 1. Screening

Plaintiff is a prisoner who has been permitted to proceed *in forma pauperis.* As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A. *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir.1998) (per curiam). Because he is proceeding *in forma pauperis,* his complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2) (B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or

malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

## 2. Excessive Force

Plaintiff faults the defendants for their alleged use of excessive force against him. An excessive force claim arises under the Eighth Amendment's prohibition against cruel and unusual punishment. In evaluating such a claim under the Eighth Amendment the issue is whether the force alleged was applied maliciously and sadistically for the very purpose of causing harm, or whether the application of force was merely a good faith effort to maintain or restore discipline. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010), quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). The factors to be considered in determining whether the force applied was excessive include (a) the extent of injury sustained, if any, (b) the need for the application of force, (c) the relationship between the need for force and the amount of force utilized, (d) the threat reasonably perceived by prison officials, and (e) any efforts made to temper the severity of a forceful response. *Hudson v. McMillian, supra*, 503 U.S. at 7.

The United States Supreme Court has held that while the malicious and sadistic use of force to cause harm is actionable, "[t]hat is not to say that every malevolent touch by a prison

guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9. Rather, "[t]he Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.* at 9-10 (internal quotation marks omitted).

In its application of that maxim, the Fifth Circuit has held "... to support an Eighth Amendment excessive force claim a prisoner must have suffered from the excessive force a more than *de minimis* physical injury, but there is no categorical requirement the physical injury be significant, serious, or more than minor." *Gomez v. Chandler*, 163 F.3d 921, 924 (5th Cir.1999).

Accepting plaintiff's allegations as true, he has not demonstrated that the force used by defendants was applied maliciously and sadistically to cause harm, as is required for a viable excessive force claim. More importantly, the pleadings suggest that the force applied by the defendants was minimal. Indeed, plaintiff has not demonstrated that he suffered ANY injury much less a *de minimis* injury resulting from the force employed. He did not describe any physical injury; nor can one envision an other than *de minimis* injury resulting from the actions of the defendants as described by plaintiff.

In short, it appears that plaintiff alleged only mental and emotional injury as a result of the complained of event and such a claim standing alone does not state a claim for which relief may be granted. Title 42 U.S.C.§1997e(e), provides"[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." The "'physical injury' required by § 1997e(e) 'must be more than *de minimus* [sic], but need not be significant.' " *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir.1999) (quoting *Siglar v. Hightower*, 112 F.3d

191, 193 (5th Cir.1997)) (alteration in original).

Finally, verbal threats, without more, do not support a claimed constitutional violation. *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir.1997); *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir.1983). Further, plaintiff's allegation that he was otherwise verbally abused, while regrettable, does not state a claim of constitutional dimension.  Allegations of mere verbal abuse by prison guards simply do not give rise to a cause of action under § 1983. *Bender v. Brumley*, 1 F.3d 271, 274 n. 4 (5 Cir.1993), *Siglar v. Hightower*, 112 F.3d 191 (5 Cir.1997.

In short, with regard to his excessive force claim, plaintiff has failed to state a claim for which relief may be granted.

### 3. Equal Protection and Educational/Rehabilitation Programs

Plaintiff argues that he and other sex offenders imprisoned at RBDC are barred from participating in various educational and rehabilitation Programs offered at the prison. Plaintiff contends that he is entitled to participate in educational and vocational programs during the period of his incarceration. Plaintiff mistakenly assumes that he has a Constitutional right to participate in such rehabilitation programs.  Inmates do not a have a protected property or liberty interest in rehabilitation programs.  *Jackson v. Cain*, 864 F.2d 1235, 1250 (5th Cir.1989) ; *Moody v. Baker*, 857 F.2d 256, 257-58 (5th Cir.1988). Nor do prisoners have a constitutional right to participate in drug treatment programs. *See Moody v. Doggett*, 429 U.S. 78, 88 n. 9, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976) (Prisoner classification and eligibility for rehabilitation programs are not subject to "due process" protections).  The "state has no constitutional obligation to provide basic educational or vocational training to prisoners." *Beck v. Lynaugh*, 842 F.2d 759, 762 (5th Cir.1988).  Thus, plaintiff's complaint, insofar as it asserts the existence

of a constitutional right to rehabilitation programs is frivolous.

*4. Conditions of Confinement*

Complaints about prison conditions are analyzed under the Eighth Amendment which proscribes cruel and unusual punishment. While the Eighth Amendment does not prohibit punishment it does prohibit cruel and unusual punishment including the unnecessary and wanton infliction of pain. *See Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). Additionally, while the Eighth Amendment does not mandate comfortable prisons, it does not permit inhumane ones. *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir.1999).

Federal courts employ a two-part test to determine whether a prisoner has established an Eighth Amendment violation. *Harper,* 174 F.3d at 719. First, there is an objective requirement that the plaintiff demonstrate conditions "so serious as to deprive prisoners of the minimal measure of life's necessities," as when the prisoner is denied "some basic human need." *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir.1995); *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Second, under a subjective standard, it must be shown that the responsible prison officials acted with deliberate indifference to the prisoner's conditions of confinement. *Woods*, 51 F.3d at 581. "The second requirement follows from the principle that only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Farmer*, 511 U.S. at 834, 114 S.Ct. 1970 (internal quotation marks and citations omitted) (emphasis added).

"For conditions of confinement to rise to the level of an Eighth Amendment violation, they must be "cruel and unusual" under contemporary standards. *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). To the extent that such conditions are restrictive

and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society. *Id.* However, when the restrictions of confinement rise to a level that results in physical torture, it can result in pain without penological purpose constituting cruel and unusual punishment under the Eighth Amendment. *Id.*" *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). Plaintiff's complaint simply does not rise to the level of Eighth Amendment violations.

Plaintiff and his fellow inmates may be clearly inconvenienced by the prison's shortcomings. However, this inconvenience does not amount to cruel and unusual punishment.

To rise to the level of a constitutional violation, the conditions must be " 'so serious as to deprive [plaintiff] of the minimal measure of life's necessities... '"*Alexander v. Tippah County*, 351 F.3d 626, 630 (5th Cir.2003) (quoting *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir.1995)). Furthermore, in order to prevail on such a claim, the plaintiff must demonstrate not only that he was exposed to a substantial risk of serious harm, but that he actually suffered some harm that was more than *de minimis*. *See Siglar v. Hightower*, 112 F.3 191, 193-94 (5th Cir.1997); *Alexander v. Tippah County, Miss*, 351 F.3d at 630-31; *Luong v. Halt*, 979 F.Supp. 481, 486 (N.D.Tex.1997). Plaintiff has alleged no specific injury resulting from the complained of conditions. Further, even if plaintiff were able to demonstrate some physical harm beyond *de minimis* inconvenience, his claim would still be subject to dismissal because he has not shown that the defendants were deliberately indifferent to his plight. Plaintiff's conditions of confinement claim is frivolous.

*5. Grievances*

Plaintiff faults the Sheriff and Warden for failing to promptly and regularly attend to prisoner grievances. Standing alone, this does not allege a Constitutional violation. Compare

11

*Geiger v. Jowers*, 404 F.3d 371 (5th Cir. 2005) (Prisoners do not have a federally protected liberty interest in having their grievances resolved to their satisfaction; any alleged due process violation arising from the alleged failure to investigate prisoner grievances is indisputably meritless); (see also *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 138, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977) (Burger, C.J., concurring) (applauding the institution of grievance procedures by prisons but not suggesting that such procedures are constitutionally required); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir.1996) ("[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause."); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.1994) ("[T]he constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir.1993) (quotation omitted) (holding that a prison grievance procedure is not a substantive right and "does not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment"); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir.1991 (per curiam) (concluding regulations providing for administrative remedy procedure do not create liberty interests in access to that procedure); and *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir.1988) ("There is no legitimate claim of entitlement to a grievance procedure."). Plaintiff also claims that grievances submitted to other agencies and the Courts are intercepted and destroyed, however, he offers no factual support for this conclusory claim. In other words, plaintiff's claim is frivolous.

### *6. Searches*

Plaintiff claims a Fourth Amendment violation resulting from random searches of the prison dorm. The Supreme Court has held that random searches of inmates, individually or

collectively, and their cells and lockers are valid and necessary to ensure the security of the institution and the safety of inmates and all others within its boundaries. This type of search allows prison officers flexibility and prevents inmates from anticipating, and thereby thwarting, a search for contraband. *See Hudson v. Palmer*, 468 U.S. 517, 529, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), citing *Marrero v. Commonwealth*, 222 Va. 754, 757, 284 S.E.2d 809 (1981). The *Hudson* Court held that prisoners have no legitimate expectation of privacy and that the Fourth Amendment's prohibition on unreasonable searches does not apply in prison cells. Plaintiff's Fourth Amendment claim is therefore subject to dismissal as frivolous.

### 7. *Contact Visitation*

Plaintiff also complains that contact visitation is prohibited in violation of the First, Fifth, and Eighth Amendments. The defendants' denial of contact visitation does not violate the plaintiff's rights. *Thorne v. Jones*, 765 F.2d 1270, 1274 (5th Cir.1985) (holding inmates maintain no constitutional right to physical association), citing *Block v. Rutherford*, 468 U.S. 576, 104 S.Ct. 3227, 3234, 82 L.Ed.2d 438 (1984). Custodial officials have the authority to monitor, control, and restrict inmate visitations. *Berry v. Brady*, 192 F.3d 504, 508 (5th Cir.1999). Indeed, under certain circumstances officials may legitimately prohibit all visitation. *Id.* Consequently, there is no legal basis to the plaintiff's argument that denial of contact visits violates his constitutional rights.

### 8. *Food*

Plaintiff complains that some inmates are deprived of meals from time to time and that all inmates, except trustys and kitchen staff, receive an insufficient portion of food. The Constitution mandates that inmates be provided " 'well-balanced meal[s], containing sufficient

nutritional value to preserve health.'" *Green v. Ferrell*, 801 F.2d 765, 770 (5th Cir.1986)(quoting *Smith v. Sullivan*, 553 F.2d 373, 380 (5th Cir.1977)) (footnote omitted); see also *Eason v. Thaler*, 73 F.3d 1322, 1327 (5th Cir.1996) (*per curiam*) ("To comply with the Constitution, inmates must receive 'reasonably adequate' food."). Whether the deprivation of food falls below the constitutional threshold depends on the amount and duration of the deprivation. *See Talib v. Gilley*, 138 F.3d 211, 214 n. 3 (5th Cir.1998) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (internal quotations omitted). In fact, even on a regular, permanent basis, two meals a day may be adequate. *See Green*, 801 F.2d at 770–71.

In *Talib*, the Fifth Circuit expressed serious doubts that the prisoner-plaintiff, who "missed about fifty meals in five months and lost about fifteen pounds," met that threshold. *Talib*, 138 F.3d at 214 n. 3. The instant complaint does not even rise to the level mentioned in *Talib*. Plaintiff does not allege that he was denied anything close to the "minimal measure of life's necessities ..." during his period of incarceration at CCC. Plaintiff has offered only a conclusory allegation that the RBDC diet was calorically inadequate and/or lacking in nutrition. His claim is frivolous.

### 9. C.F.C. Program

Plaintiff complains about the existence of the C.F.C. program and suggests nefarious behavior on the part of the defendants with respect to the program. Plaintiff has presented many very general and conclusory complaints about the conditions of confinement at RBDC, most of which do not indicate that any of the deprivations or conditions have caused him personal harm. This claim is another such example; he has not demonstrated any personal harm arising from the existence of the C.F.C. program. Plaintiff clearly lacks standing, which derives from the

Constitution's restriction of federal court jurisdiction to "cases and controversies." U.S. Const. art. III, § 2, cl.1.

To establish standing, a plaintiff must demonstrate three things: (1) an injury in fact or a harm that is "actual or imminent, not conjectural or hypothetical," (2) causation, and (3) redressability. *Whitmore v. Arkansas*, 495 U.S. 149, 155, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990). Absent some allegation of personal harm to him or a violation of his constitutional rights, plaintiff fails to satisfy the first element. *See ACLU v. Nat'l Sec. Agency*, 493 F.3d 644, 659 (6th Cir.2007) (observing that the standing doctrine "applies to every claim sought to be litigated in federal court"). Without standing, plaintiff's claims are legally frivolous and fail to state a claim for which relief can be granted.

### 10. Nutrition and Cleanliness

For the reasons stated above, in the sections dealing with food and conditions of confinement, this claim is likewise subject to dismissal.

### 11. Time to Eat Meals

For the reasons stated above, in the sections dealing with food and conditions of confinement, this claim is likewise subject to dismissal.

### 12. Readily Available Medical Care

Plaintiff argues that the prison should maintain a medical department staffed with health care professionals 24 hours/day. Once again, plaintiff has alleged no injury resulting from the failure of the facility to provide 24 hour/day services. His claim is frivolous.

### 13. Medical Officer

Plaintiff also complains that the facility's "medical officer" has failed in his obligation to

report or cure the deficiencies noted above. Again, plaintiff lacks standing since he cannot demonstrate an actionable injury or other harm.

### 14. Access to Courts

Plaintiff also complained that he was denied free access to pens, ink, paper, and postage. By way of these allegations, plaintiff implies that he was denied his constitutionally protected right of access to the courts. "It has long been recognized that prisoners generally enjoy the constitutional right of access to the court." *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir.1999). *See Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969). The right of access to the court is not unlimited, however, and includes "only a reasonable opportunity to file non-frivolous legal claims challenging [the prisoners'] convictions or conditions of confinement." *Id.* (citing *Lewis v. Casey*, 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996)). Put another way, "[w]hile the precise contours of a prisoner's right of access to the courts remain somewhat obscure, the Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court." *Brewer v. Wilkinson*, 3 F.3d at 821; *Lewis v. Casey*, 518 U.S. at 351, 116 S.Ct. at 2179-81; *Norton v. Dimazana*, 122 F.3d at 290; and *Eason v. Thaler*, 73 F.3d 1322, 1329 (5th Cir.1996). Here, plaintiff claims are clearly refuted by the record and his prior litigation history. Plaintiff claims that he and other indigent inmates are not granted access to the tools needed to litigate post-conviction claims or civil rights claims. However, it should be noted that plaintiff was able to submit a 20-page hand-written original complaint [Doc. 1] along with 2 exhibits [Doc. 1-1]. He submitted these pleadings in an envelope that bore appropriate postage. [Doc. 1-2] Thereafter he submitted a 9 page form

complaint in an envelope that bore appropriate postage. [Doc. 4] He also submitted a properly executed application to proceed in forma pauperis. [Doc. 5] In other words, it does not appear that he was or is unable to procure the tools needed to file a petition or complaint in this or any other court.

Nevertheless, in order for him to state a claim that he was denied his constitutional right of access to the courts, even if he can show some interference, he must also "demonstrate[ ] that his position as a litigant was <u>prejudiced</u> by his denial of access to the court." *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir.1996) (*per curiam*) (citing *Walker v. Navarro County Jail*, 4 F.3d 410, 413 (5th Cir.1993)). This requirement that a claimant show "<u>actual injury</u>" is "not satisfied by just any type of frustrated legal claim." *Lewis*, 518 U.S. at 354.

In other words, plaintiff, at the very least, must show that he was prevented from filing a non-frivolous pleading. Plaintiff has made no such showing. In other words, plaintiff's access to courts claim is also frivolous.

### *15. Legal Mail*

Finally, plaintiff complains that "all of the plaintiff's and all other inmates mail that is out-going has to [be] left open for prison administration and staff for inspection, including all confidential legal mail and correspondences ... without any notice or reasons given as to the institutional interests or safety concerns by prison administrators." According to plaintiff "privileged out-going mail to attorneys and the courts, are read, inspected and screened by prison administration."

While such practice, if true, would be improper, see Jones v. Diamond, 594 F.2d 997 (5th Cir. 1997) ("Outgoing mail to be licensed attorneys, courts, and court officials must be sent

unopened, and incoming mail from such sources may be opened only in the presence of the inmate recipient if considered necessary to determine authenticity or to inspect for contraband."), plaintiff does not explain how he can possibly know that prison authorities read or otherwise interfere with out-going legal mail.

Further, plaintiff has not alleged elsewhere that he is represented by counsel and that correspondence between him and his attorney has been intercepted and read by prison authorities, nor does it appear that his correspondence with this court has been interfered with. This claim is likewise frivolous.

### *Conclusion and Recommendation*

Therefore,

**IT IS RECOMMENDED THAT** plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted in accordance with the provisions of 28 U.S.C. §§ 1915 and 1915A.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings**

**or the legal conclusions accepted by the District Court, except upon grounds of plain error.**

*See, Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, January 9, 2015.

_____
**KAREN L. HAYES**
**UNITED STATES MAGISTRATE JUDGE**